UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC D. FREED, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 1997 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NEIL FRIEDMAN, C.P.A., P.C., d/b/a Michael Silver and Co., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Eric Freed brought, then voluntarily dismissed, and then brought again this diversity suit against Neil Friedman, C.P.A., P.C., d/b/a Michael Silver & Co., an accounting firm. Doc. 25; *see Freed v. Neil Friedman, C.P.A., P.C.*, No. 14 C 7241 (N.D. Ill. filed Sept. 17, 2014). Freed alleges that Ronald Weiss, an accountant who worked at Silver, misstated various aspects of Freed's financial dealings with a law firm in which he formerly was a partner, Doc. 25 at ¶¶ 49-63, 91-98; that those misstatements inflated his tax liabilities and otherwise harmed him financially, *id.* at ¶¶ 64-73, 99-107, 111; and that Silver's negligent supervision of Ronald Weiss makes it liable for those harms, *id.* at ¶¶ 77-85. Silver has moved the court to stay and abstain from hearing this case under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending resolution of two earlier-filed suits that Freed currently is litigating in Illinois state court. Doc. 31. The motion is granted.

## Background

This is not Freed's first rodeo—or his second, third, or fourth. He is the plaintiff in two other cases on this court's docket: *Freed v. Weiss*, Case 12 C 6720, and *Freed v. JPMorgan Chase Bank, N.A.*, Case 12 C 1477, both of which are stayed pursuant to *Colorado River*. *See*

1

*Freed v. Weiss*, 974 F. Supp. 2d 1135 (2013) ("*Freed I*"), *aff'd sub nom. Freed v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013 (7th Cir. 2014) ("*Freed II*"). He also is currently litigating at least two Illinois state court cases: *Freed v. Weiss*, Case 2011 CH 41529 (Cir. Ct. Cook Cnty., Ill.), and *Freed v. Quantum Legal LLC*, Case 2014 CH 14770 (Cir. Ct. Cook Cnty., Ill.). Docs. 31-1, 31-2. Like this suit, those suits concern grievances stemming from the dissolution of the law firm referenced above. The firm has had various names over the years, such as "Freed & Weiss, LLC," "Quantum Legal LLC," and "Complex Litigation Group, LLC." Doc. 31 at ¶ 1; Doc 33 at 1; *Freed I*, 974 F. Supp. 2d at 1139. For simplicity, this opinion will refer to the firm as "the LLC." The various state and federal cases are referred to by docket number, and all record citations herein are to the docket in this case unless otherwise noted. Because the previous federal cases and one of the state cases (Case 2011 CH 41529) were described in *Freed I*, 974 F. Supp. 2d at 1138-45, and *Freed II*, 756 F.3d at 1016-18, the court presumes familiarity with those decisions.

In Case 12 C 6720, Freed sued three defendants: the LLC itself; Freed's former co-managing partner in the LLC, Paul Weiss ("Weiss"); and Weiss's father, the aforementioned Ronald Weiss ("Ronald Weiss"), who provided accounting services to the LLC as an employee and agent of Silver. *Freed II*, 756 F.3d at 1016; *Freed I*, 974 F. Supp. 2d at 1137-38; Doc. 25 at ¶¶ 16, 19-20. That suit centered on a scheme allegedly concocted and executed by Weiss—with Ronald Weiss's assistance—to freeze Freed out of the LLC and take its assets. Doc. 1 (12 C 6720) at ¶¶ 1-3, 49-55. Freed alleged that he had provided "virtually all of [the LLC's] operating capital through loans in excess of $12 million" and was "entitled to repayment of the loans before [the LLC] could make distributions to other members." *Freed II*, 756 F.3d at 1016 (internal quotation marks omitted). Weiss allegedly carried out the scheme by fraudulently

transferring the LLC's funds into bank accounts that he controlled, and also by asserting that

Freed had withdrawn LLC funds in March 2011 in violation of the partnership agreement and

had thereby voluntarily disassociated himself from the LLC and relinquished control over it.

*Freed I*, 974 F. Supp. 2d at 1138.

Freed filed the other federal case, Case 12 C 1477, in Illinois state court against

JPMorgan Chase Bank, which removed the suit to this court and then brought third-party claims

against Weiss, his wife, Jamie Saltzman Weiss ("Saltzman"), and the LLC. *Id*. at 1137. In that

suit, Freed alleged that Chase committed tortious interference with the partnership agreement

between Freed and Weiss by encouraging and assisting Weiss's siphoning of funds from the

LLC's accounts at Chase and, additionally, that Chase aided and abetted Weiss's breach of

fiduciary duties that he owed to Freed. *Id*. at 1143. Those claims against Chase required Freed

to prove the impropriety of the underlying transactions that Weiss undertook with regard to the

LLC. *Ibid*. Both Case 12 C 6720 and Case 12 C 1477 are currently stayed pursuant to *Colorado*

*River*, pending the state court's resolution of Case 2011 CH 41529. *Freed II*, 756 F.3d at 1024.

In Case 2011 CH 41529, Freed (individually and derivatively on behalf of the LLC) sued

Weiss and Saltzman. *Freed I*, 974 F. Supp. 2d at 1137. That suit's factual allegations largely

overlap with those in Case 12 C 6720. *Id*. at 1139. Weiss and the LLC responded with

counterclaims against Freed. *Id*. at 1137, 1139. After the defendants in the federal suits filed

abstention motions in this court, the state court granted Freed's motion to voluntarily dismiss his

claims. *Id*. at 1137. Because Weiss and the LLC had filed counterclaims, however, the state

court's dismissal of Freed's claims did not end the state case. *Ibid*. That case remains pending,

*see* Docket, 2011 CH 41529 (Cir. Ct. Cook Cnty., Ill.), https://perma.cc/GVK5-TXNP (last

visited Oct. 17, 2016), and both Saltzman and the LLC remain in that litigation, aligned with

Weiss. Doc. 31-4 at 2; *Freed II*, 756 F.3d at 1019 (describing the alignment of the parties in that case).

The counterclaims in Case 2011 CH 41529 allege that Freed dissociated from the LLC in March 2011 or, in the alternative, that he thereafter engaged in misconduct that should have resulted in his being expelled from the LLC under the Illinois Limited Liability Company Act, 805 ILCS 180/1-1 *et seq*. Doc. 31-1 at ¶¶ 1, 216-242. The gravamen of the alleged misconduct is that Freed "withheld his services from [the LLC]," "secretly [took] $1.5 million of [the LLC]'s funds," and as a result "was grossly over-paid for his membership interest." *Id*. at ¶ 1. The counterclaims seek, among other things, a declaration of the parties' rights and obligations under the partnership agreement, *id*. at ¶¶ 144-69—including "[a] declaration that, as of the date of Freed's voluntary termination, Freed had been repaid any and all funds that Freed had previously advanced to [the LLC] for the normal and ordinary operations of [the LLC]," *id*. at 28 ¶ b; *see also id*. at 49 ¶ b (seeking the same if Freed is deemed to have dissociated for other reasons)—as well as compensation for Freed's alleged misappropriation of funds to which he was not entitled, *id*. at 33 ¶ a, 35 ¶¶ a-b, 39 ¶ b, 43 ¶ b. The claims sound principally in contract, fiduciary duty, and partnership law. Doc. 31-1.

A dispute has arisen in Case 2011 CH 41529 over whether Weiss, Saltzman, and the LLC, on the one hand, and Freed, on the other, entered into a settlement. Doc. 31 at ¶ 19; Doc. 33 at 8-9. In August 2015, Weiss, Saltzman, and the LLC filed a motion to enforce the (alleged) settlement agreement. Doc. 31-4. The parties are in the midst of contesting that motion, with Freed asserting that the alleged settlement agreement was never finalized and does not bind him. Doc. 33-1 at 2-16; Doc. 33-2 at ¶ 4; Doc. 33-3. Freed and Silver nevertheless agree—as Freed confirmed at a hearing on the present motion—that the purported settlement, if valid, contains a

third-party release that would foreclose Freed's claims against Silver in this case. Doc. 31 at ¶ 19 (describing the purported settlement agreement and third-party release); Doc. 33 at 8-9 (contesting the validity and enforceability of the purported settlement agreement, but not challenging Silver's assertion that one of its provisions was a third party release that included Silver).

Freed (again, both individually and derivatively on behalf of the LLC) initiated a second suit in state court, Case 2014 CH 14770, on September 12, 2014—just over two months after the Seventh Circuit affirmed this court's decision to abstain in Cases 12 C 6720 and 12 C 1477, and less than a week before Freed filed his earlier, abortive iteration of this federal suit. Doc. 31-2. The 2014 state suit names Weiss, Saltzman, and the LLC as defendants, and seeks dissolution of the LLC, damages for the defendants' alleged unlawful distributions and failure to repay loans owed to Freed, and an order voiding certain allegedly fraudulent disbursements. *Ibid*. The complaint alleges that Weiss and Saltzman conspired to make various improper distributions from the LLC for their own benefit and to improperly transfer an interest in the LLC to Saltzman, *id*. at ¶¶ 1, 16-35, 110-120, 167-174, 184-203, even though the LLC failed to first properly cash out Freed's interest when he voluntarily dissociated on August 21, 2012, *id*. at ¶¶ 1, 70-82, 106-14. Among Freed's factual allegations are that "Paul Weiss and Saltzman conspired with LLC's accountants to create fraudulent accounting records to help them conceal their illegal conduct," *id*. at ¶ 174, and that "improper financial records maintained on behalf of LLC allowed LLC to disguise loan repayments [made to Freed] as distributions," *id*. at ¶ 215. Freed also alleges that the LLC failed to repay loans and advances that he made to it and seeks damages for that failure. *Id.* at ¶¶ 2, 233-38. Freed further alleges that determining those damages will require untangling "the illegal manipulation of LLC's financial books and records

by Paul Weiss and Saltzman" and "measures undertaken by them and by professionals paid by LLC to conceal the misreporting of LLC's finances." *Id.* at ¶ 4. Freed amended the complaint after Weiss was disbarred in November 2015, asserting that Weiss's inability to practice law, combined with the allegedly invalid attempt to transfer ownership to Saltzman, required dissolution of the partnership—with distributions for Freed's still-uncompensated share—and provides an additional basis for permitting Freed to recoup the funds that he believes he is owed. Doc. 31-3. The claims in Case 2014 CH 14770 are premised primarily on violations of Illinois statutes governing LLCs. Doc. 31-2.

Freed filed this suit in early 2016. The operative complaint, with claims sounding in negligence and negligent misrepresentation, alleges that Silver, acting through Ronald Weiss, Doc. 25 at ¶ 19, "failed to exercise due professional care" in providing accounting services to Freed, both individually and as a partner in the LLC, *id.* at ¶¶ 16, 23, 31; failed to supervise Ronald Weiss, *id.* at ¶¶ 77-85; failed to record $1.85 million in loans that Freed made to the LLC and, consequently, misclassified loan repayments as taxable disbursements, *id.* at ¶¶ 35-36, 41-42 53-57; otherwise maintained inaccurate financial records, *id.* at ¶¶ 86-116; and took steps to conceal its malfeasance, *id.* at ¶¶ 43-44, 112; *see also id.* at ¶ 67 (alleging non-reporting of the LLC's transfers to secret Chase bank accounts). Those accounting failures, the complaint alleges, accrued to Weiss' personal benefit at Freed's expense. *Id.* at ¶¶ 63, 65, 74. The complaint seeks damages for losses that Freed personally incurred as a consequence of the various accounting failures and misrepresentations, *id.* at ¶¶ 76, 85, 98, 107, 111, and those damages include compensation for taxes that Freed allegedly overpaid as a result of Silver's failure to record Freed's loans to the LLC and Silver's misclassification of loan repayments, *id.* at ¶¶ 73, 81.

**Discussion**

A stay is warranted on two independent grounds, *Colorado River* abstention and the court's inherent authority, which are discussed in turn.

**I.**      *Colorado River* **Abstention**

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed II*, 756 F.3d at 1018 (quoting *Colorado River*, 424 U.S. at 818); *see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (alteration in original) (quoting *Colorado River*, 424 U.S. at 813, 817). In determining whether to abstain, the court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (internal quotation marks omitted).

The *Colorado River* analysis has two steps. First, the court inquires "whether the state and federal court actions are parallel." *Freed II*, 756 F.3d at 1018; *see also Caminiti*, 962 F.2d at 700. If the proceedings are not parallel, *Colorado River* abstention must be denied. *Freed II*, 756 F.3d at 1018. If the proceedings *are* parallel, the court then must weigh ten non-exclusive factors to determine whether abstention is proper. *Ibid*.

**A.  Whether the Federal and State Cases Are Parallel**

State and federal suits need not be identical to be parallel.  *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011) ("[F]or *Colorado River* purposes … [p]recisely formal symmetry is unnecessary."); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) ("Interstate is correct in its assertion that differences exist.  However, the requirement is of parallel suits, not identical suits.").  Rather, suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum."  *Freed II*, 756 F.3d at 1019.  Put another way, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case."  *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (same).  "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction."  *Adkins*, 644 F.3d at 499 (alteration in original) (internal quotation marks omitted).  This suit clears the parallelism bar for two independent reasons.

First, the issues and parties in the state cases and this case are substantially the same.  Freed argues that the issues are not parallel because "[t]his action solely puts at issue accounting malpractice" and "[t]here are no accounting malpractice claims in the state actions."  Doc. 33 at 2; *see also id.* at 9-10.  True, Freed's *claims* here are styled as "negligence" and "negligent misrepresentation," which differ from the contract, partnership, and other causes of action in the state cases.  But the underlying factual disputes overlap considerably.  *See Freed II*, 756 F.3d at 1019 (instructing district courts to "examine whether the cases raise the same legal allegations or arise from the same set of facts" in evaluating parallelism).  Specifically, both this case and the

state cases arise from the same disputed series of financial transactions involving the LLC and Freed—when and whether payments between Freed and the LLC occurred, and how to classify them—and thus the claims in this suit and many of the claims in the state cases "will be resolved largely by reference to the same evidence." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752-53 (7th Cir. 2006); *see also Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002) (holding that *Colorado River* abstention was proper where the federal court would otherwise "consider[] the same evidence and arguments" as did the state court).

The state court has already been asked to adjudicate the nature and extent of the LLC's obligations to Freed. Doc. 31-1 at 28 ¶ b, 49 ¶ b; Doc. 31-2 ¶¶ 4, 233-38. The accuracy or inaccuracy of Silver's accounting turns on the nature and extent of the LLC's obligations to Freed. Doc. 25 at ¶¶ 36-37, 39, 69-73, 81. Were this court to resolve those claims, it would risk either duplicating effort with the state court or issuing rulings that conflict with the state court's rulings. Conversely, abstaining and awaiting the state court's decision would provide clarification of Freed's financial entitlements as to the LLC that could entirely dispose of the claims here. *See Freed II*, 756 F.3d at 1020 ("The federal court cannot determine the value of Freed's distributional interest until the claims brought in state court are resolved."); *id.* at 1021 ("Only after the state court resolves whether Weiss violated obligations to Freed can Freed try to hold Chase liable for assisting in that wrongdoing.").

Principles of *res judicata* provide another lens through which it is clear that Freed's claims here are parallel to the issues being litigated in state court. If Freed loses in state court based on a finding that he was "grossly over-paid for his membership interest [in the LLC]," Doc. 31-1 ¶ 1, and the state court issues a "declaration that … Freed [has] been repaid any and all funds that Freed had previously advanced to [the LLC]," *id.* at 28 ¶ b, 49 ¶ b, preclusion

almost certainly would provide Silver an immediate victory in this case. *See Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 308 n.9 (7th Cir. 1995) (discussing defensive non-mutual collateral estoppel under Illinois law); *In re Owens*, 532 N.E.2d 248, 251 (Ill. 1988) ("Defensive use of collateral estoppel precludes a plaintiff from relitigating issues by switching adversaries, and thus gives a plaintiff an incentive to try and join all defendants in the first action."). True, if Freed prevails in state court, he may be unable to use that victory offensively against Silver due to a lack of privity between Silver, on the one hand, and Weiss and the LLC, on the other. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 510 (Ill. 1994) ("Three factors are necessary for the application of collateral estoppel," including "(3) the party against whom the estoppel is asserted must be a party, or in privity with a party, to the prior adjudication."); *Havoco*, 58 F.3d at 308 n.9 (same). But parallelism under *Colorado River* requires only that there be "a substantial likelihood," not a certainty, "that the [state court] litigation will dispose of all claims presented in the federal case." *AAR Int'l*, 250 F.3d at 518 (internal quotation marks omitted).

Freed argues that a state court finding "that Freed is owed no money" would not necessarily resolve this case, since it is at least theoretically possible that Freed was repaid in full but that Silver nevertheless misclassified certain disbursements made to him. Doc. 33 at 10. But Freed points to no allegation in any of the cases indicating that such a resolution is at all probable; to the contrary, his litigating stance in state court tightly links Silver's alleged inattentiveness and Weiss's alleged duplicity by contending that Silver's accounting inaccuracies masked and enabled the LLC's failure (at Weiss's behest) to pay him his due. Doc 31-2 at ¶¶ 4, 174, 215. The two go hand-in-hand—a point the very next sentence of Freed's brief underscores. Doc. 33 at 10 ("Further, where Freed made loans to the LLC that were *never*

*recorded*, to the extent that they were repaid, they were repaid as taxable income and increased

his tax liability.").  Thus, the determination sought in state court concerning the LLC's

obligations to Freed will almost certainly resolve what accounting accuracies, if any, existed in

the first place, and, if there were none, there likely can be no liability here against Silver for

accounting failures that never occurred.  *See Freed II*, 756 F.3d at 1020 ("If the state court were

to determine that Weiss did not violate the partnership agreement or breach fiduciary duties

owed to Freed, then Ronald Weiss could not be held responsible for assisting Weiss in those

offenses.").

   So the issues are substantially the same here and in the state cases.  The parties are

substantially the same as well.  It is true, as Freed stresses, that Silver is not a party in state court;

nor, for that matter, is Ronald Weiss.  Doc. 33 at 3.  But "[o]ne way that parties in separate

actions are considered substantially the same under the *Colorado River* doctrine is when they

have nearly identical interests."  *Freed II*, 756 F.3d at 1019 (internal quotation marks omitted);

*see also Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985) ("The only

apparent basis for the Villasenors' claim is their status as the sole shareholders and owners of

Lumen.  Their interest in the outcome of the law suit is the same as that of their company.");

*Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 22-23 (1st Cir. 2010) (abstaining under *Colorado*

*River* where two parties in a Puerto Rico case were heirs to an estate on whose behalf the federal

case was brought, even though the heirs were not parties in the federal case); *Romine v.*

*Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) ("Exact parallelism is not required. …

This principle is especially apposite in the instant matter, where the interests of both the named

plaintiffs … are congruent, notwithstanding the nonidentity of the named parties.") (internal

quotation marks omitted).  Silver shares an interest with Weiss and his fellow counterclaimants

(in Case 2011 CH 41529) and defendants (in Case 2014 CH 14770) in the state court cases in securing a ruling that the LLC's obligations to Freed have been satisfied and that the accounting entries that indicate as much are above-board and accurate.

Accordingly, although the state and federal cases do not involve identical parties, they do involve "substantially the same parties." *Tyrer*, 456 F.3d at 752; *see also Freed II*, 756 F.3d at 1019 ("Moreover, while the various defendants are not identical in the two cases, their *interests* are nearly identical: to show that neither fiduciary duties nor the partnership agreement were breached and to have the court determine that Freed dissociated from CLG in March 2011, or in the alternative, to dissolve CLG and distribute its assets accordingly. The parties' interests are substantially the same."). What this court said when staying Freed's earlier suit against Ronald Weiss holds true for this action against Silver, which is, after all, Ronald Weiss's employer:

> Ronald Weiss is a defendant only in the federal suit. But Freed's claim against Ronald Weiss is derivative of his claim against Weiss, in that Freed claims that Ronald Weiss breached duties owed to Freed when Weiss received the help of his father Ronald Weiss, the LLC's accountant, to create false accounting records that concealed Weiss's theft from Freed. If Weiss is not liable for any theft or other misconduct, then Ronald Weiss could hardly be liable for having helped Weiss to cover up that alleged misconduct.

*Freed I*, 974 F. Supp. 2d at 1140 (citation omitted) (internal quotation marks omitted); *see also Freed II*, 756 F.3d at 1020 ("As the district court correctly determined, Freed's action against Ronald Weiss is derivative of his claim against Weiss."). A materially identical dynamic exists here. Silver's liability for Ronald Weiss's alleged accounting errors turns on proving that Weiss's account of the parties' obligations to one another (on which Ronald Weiss signed off) is duplicitous or otherwise inaccurate; if Weiss's version proves correct, then there were no accounting inaccuracies for which to hold Silver accountable.

It follows that this federal suit and the state suits are not rendered non-parallel by the inclusion in this suit of a party, Silver, not present in the state suits. *See AAR Int'l*, 250 F.3d at

518 ("the mere presence of additional parties … in one of the cases will not necessarily preclude a finding that they are parallel"). "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties. … [I]ts impact cannot be obliterated by the stroke of a pen." *Lumen*, 780 F.2d at 695. It is true that, unlike Ronald Weiss in Case 12 C 6720, Silver is not an *additional* defendant here but rather the *only* defendant, but that does not preclude a finding of parallelism. *See Freed II*, 756 F.3d at 1020-21 (affirming this court's finding of parallelism between the claim that Freed brought against only Chase in Case 12 C 1477 and the state counterclaims in Case 2011 CH 41529, which did not involve Chase). The only difference is that there was a third-party complaint by Chase against the LLC, Weiss, and Saltzman in Case 12 C 1477, making them parties to that suit, *id*. at 1020, and there is not any equivalent third-party claim bringing them into the present case. But that is just the flip side of the same coin—much as Freed could have, but did not, sue Silver in the state cases, the only thing stopping him from suing Weiss and the LLC in this suit is the fact that he already did so separately in Case 12 C 6720. Parallelism remains. *See Knight v. DJK Real Estate Grp., LLC*, 2016 WL 427614, at *4-5 (N.D. Ill. Feb. 4, 2016) (finding parallelism even though the plaintiff faced completely different adversaries in state and federal court, where those differences flowed entirely from the plaintiff's "unilateral choice[s]").

Indeed, a finding that the cases are not parallel predicated on Silver's absence from the state suits (and Weiss's and the LLC's absence from this one) would unjustly reward strategic behavior, because Silver's absence from the state proceedings is attributable entirely to Freed. *See Freed II*, 756 F.3d at 1020 ("The decision to exclude Weiss from the original state court proceeding was entirely Freed's choice."). It was Freed who decided to sue Silver in a separate suit rather than adding it as a defendant in his state suits against Weiss. This is not a new tactic

for Freed.  In 2012, Freed sued Chase separately when there was no need to do so, and he had even brought yet another standalone suit against another bank, Northern Trust, which according to Freed also was in cahoots with Weiss.  *See Freed I*, 974 F. Supp. 2d at 1144.  As the court observed in *Freed I*, "Judge Pantle [the state trial judge presiding over the state suits] has repeatedly remarked, with ample justification, that Freed is attempting to avoid her courtroom, and her adverse rulings, by filing several suits rather than combining all of his related claims before her in the state court *Freed v. Weiss* lawsuit."  *Ibid.* (collecting Judge Pantle's statements). This court held, and the Seventh Circuit agreed, that Freed's divide-and-conquer litigation tactics reinforced, rather than undermined, the conclusion that this court should abstain from Freed's claims against Chase.  *See Freed II*, 756 F.3d at 1020-21 (reasoning that parallelism existed because "Freed actively chose to exclude Chase as a defendant in the state court proceeding when it could have been joined as a party and there appears to be no legitimate reason for Freed to leave Chase out of the state court action").  That is not behavior the parallelism requirement was intended to reward.  *See Knight*, 2016 WL 427614, at *5 ("Nothing is stopping Upper Midwest from bringing as a counterclaim against Westfield and/or a third-party claim against DJK in state court the same claims it has brought here—nothing other than Upper Midwest's desire to have a federal judge examine the subrogation issue already squarely before the state judge in the guise of affirmative defenses.").  Under the present circumstances—where Silver's liability in the federal suit flows from the liability of Weiss, a party in the state suit, and also where Silver's presence in the federal suit and absence from the state suit is entirely Freed's doing—Silver's absence from the state suit does not defeat parallelism.

There is a second, independent ground for finding parallelism: the pending motion to enforce the purported settlement agreement in Case 2011 CH 41529.  If the state court grants the

motion, a third party release of liability in the agreement would dispose of the claims in this case.

Doc. 31 at ¶ 19 (Silver asserting that proposition); Doc. 33 at 8-9, 11-12 (Freed not refuting it).

Freed conceded as much during argument on this motion:

> THE COURT: … [T]he defendant argued that there's currently a motion to enforce a settlement agreement in state court, and suggested that if the motion is granted, it would impact the claims that Freed is bringing against the accounting firm in this case.
>
> And in the response brief, I saw Freed argue that the motion to enforce is going to be denied or should be denied, but he didn't question the premise, which is if the motion to enforce is granted, it would impact this case. Did I read that correctly?
>
> PLAINTIFF'S COUNSEL: Well, I think that's true. …
>
> … [I]n the document it does, I believe, purport to release Michael Silver. So, yes, if the state court found that there was a settlement, it would dispose of this case.

Silver's stake in the validity of the alleged settlement means that any claims against it here could be fully resolved in the state case. *See Huon*, 657 F.3d at 646 (holding that cases are parallel under *Colorado River* when there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case") (internal quotation marks omitted); *Lumen*, 780 F.2d at 695 ("[O]ne can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court."); *Knight*, 2016 WL 427614, at *5 (finding parallelism in part because "if Upper Midwest is found not liable in state court, the only claim remaining here would concern Upper Midwest's seeking attorney fees and costs as damages"). This means that the possible settlement that has become a focal point of the state case could—and would—create the kind of dispositive issue that satisfies the parallelism requirement. That is so because the settlement (if found valid) would dispose of this case and because it makes Silver, in effect, a de facto interested party—even though not formally a litigant—in the state court litigation. This conclusion is in keeping with the Seventh Circuit's

teaching that the precise claims advanced in a state case can evolve over time, and sound judicial administration requires the federal court to look to whether the suits are parallel at the time it rules on the abstention motion, not to whether they were parallel at some earlier date. *See Day v. Union Mines Inc.*, 862 F.2d 652, 658 (7th Cir. 1988) ("a stay should be upheld in the interests of judicial economy if the concurrent suits are parallel at the time of review, as they are here, even if they were not parallel when the stay was entered").

Most of Freed's contrary arguments regarding the settlement agreement concern the merits—he insists that the purported settlement was never finalized and that the settlement will be found unenforceable. Doc. 33 at 8-9, 11; Doc. 33-1. Perhaps,[*] but the question of the settlement's validity is before the state court, not this one, and it is the state court that should

---

[*] On the question whether the settlement was finalized, Weiss maintains in state court that the parties orally agreed to settle in a February 6, 2015 phone call. Doc. 31-4 at 3. Michael Freed—Freed's father and his then-attorney—memorialized that call in an e-mail two days later to Weiss's attorney to "confirm our conversation on Friday that the parties have agreed to settle all matters in litigation relating to Eric's and Paul's partnership breakup." *Ibid.* Michael Freed's e-mail also described the "broad terms" of that agreement, including the compensation that Freed would receive. *Ibid.* During the next several months, the parties exchanged numerous drafts of a comprehensive written agreement consistent with those broad terms. *Id.* at 3, 5. On July 3, 2015, Michael Freed e-mailed Weiss's attorney, stating: "We have a deal. Eric agrees to the terms contained in the agreement attached to your below e-mail [of July 1, 2015]." *Id.* at 4; Doc. 33-1 at 28. When Weiss's attorney then forwarded a copy of that agreement—which is the settlement that Weiss, Jamie Weiss, and the LLC seek to enforce—for Freed to sign, Michael Freed replied on July 5: "I notice that the clean version of the settlement agreement that you sent me has a reference at the top of each page to it being a draft. The parties should sign a document which does not have this language so you will need to clean that up." Doc. 33-1 at 32. Despite having sent those emails, Michael Freed—as noted, an attorney—now avers in opposition to the motion to enforce: "When I used the colloquialism, 'We have a deal' in the [July 3] e-mail … it was not my intention to bind Eric Freed to the terms of a settlement agreement, absent execution of an agreement by the parties thereto, nor did I believe that I had done so." Doc. 33-2 at 41 ¶ 16. He further avers: "In using the term 'deal' … I was stating that in my view, terms and conditions had been identified for an agreement to be signed by the parties. This understanding … in my view is completely inconsistent with the creation of a final and binding agreement." *Id.* at 41 ¶ 18. All of this evidence is currently before Judge Pantle.

have the opportunity to address it in the first instance.  *See Freed I*, 974 F. Supp. 2d at 1142

(holding that parallelism existed where "the state court is set to resolve Freed's argument").

Freed thus continues to "miss the point of a *Colorado River* motion, which is not to decide who

has the better case, but merely to decide which court should decide."  *Ibid*.

     Freed cites *Rosenbauer America, LLC v. Advantech Service & Parts, LLC*, 437 F.

Supp. 2d 1081 (D.S.D. 2006), for the proposition that "[t]he pendency of a motion to enforce a

settlement does not render *lawsuits* or *actions* parallel under *Colorado River*."  Doc. 33 at 11.

For the reasons stated above, this court respectfully disagrees.  In any event, and as will be

discussed in Part II, even though *Rosenbauer* concluded that the pending motion to enforce a

settlement there did not justify *Colorado River* abstention, it nevertheless held that a stay was

warranted.  Freed cites no examples of courts denying a stay where a motion to enforce a

settlement in a state court could dispose of the claims in the federal suit.

     In sum, this litigation is parallel to the state court proceedings in which Freed is already

enmeshed, both because of the issues and parties involved and also because of the pending

motion to enforce a settlement.  Thus, *Colorado River*'s first requirement is satisfied.

     **B.**    **The *Colorado River* Factors**

     The second step in the *Colorado River* analysis requires examining and balancing these

ten non-exclusive factors:

       1)  whether the state has assumed jurisdiction over property;

       2)  the inconvenience of the federal forum;

       3)  the desirability of avoiding piecemeal litigation;

       4)  the order in which jurisdiction was obtained by the concurrent forums;

       5)  the source of governing law, state or federal;

       6)  the adequacy of state-court action to protect the federal plaintiff's rights;

7) the relative progress of state and federal proceedings;

8) the presence or absence of concurrent jurisdiction;

9) the availability of removal; and

10) the vexatious or contrived nature of the federal claim.

*Freed II*, 756 F.3d at 1018 (quoting *Tyrer*, 456 F.3d at 754). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19; *see also Tyrer*, 456 F.3d at 754. The court will address each factor in turn, making distinctions between the two state suits where appropriate. *See Freed II*, 756 F.3d at 1022 (noting that *Colorado River* abstention requires adherence to "rigorous standards," which were met where this court "carefully addressed each of the ten factors and provided sufficient explanations for its findings").

*1. Whether the state has assumed jurisdiction over property.* The parties dispute the relevance of this factor. Freed argues that, unlike in his two previous federal suits, the fact that the state court has issued orders concerning the partnership's assets is not relevant here because this suit doesn't seek disposition of those assets. Doc. 33 at 12. Silver counters that the LLC's property is nevertheless still "at issue in this case given that Freed claims Silver improperly accounted for it." Doc. 35 at 7.

Silver has the better of the argument. The Seventh Circuit most recently described this factor as concerning whether "the state court assumed jurisdiction over property *relevant to* the claims in this appeal." *Freed II*, 756 F.3d at 1021 (emphasis added). So, even if this suit will not *formally* resolve ownership of the LLC's assets, it will require determining which of those assets rightfully belonged to whom, setting up a possible conflict with the state court's rulings. *See African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 799-800 (5th Cir. 2014) ("The

federal court's exercise of jurisdiction in the subsequently filed, parallel federal action would present a significant risk of inconsistent rulings as to the ownership of the property."). Accordingly, this factor favors abstention.

2. *The inconvenience of the federal forum.* Because the federal and state suits are pending in courts located in Chicago, the federal forum is not inconvenient, and the second factor weighs against abstention. *See Freed II*, 756 F.3d at 1021-22.

3. *The desirability of avoiding piecemeal litigation.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results …." *Day*, 862 F.2d at 659; *see also Freed II*, 756 F.3d at 1022. "When two courts are given the task to oversee similar proceedings … it is effectively duplicating the amount of judicial resources required to reach a resolution." *Freed II*, 756 F.3d at 1022 (internal quotation marks omitted); *see also Day*, 862 F.2d at 659 ("Dual proceedings could involve what we have called a grand waste of efforts by both the court and parties in litigating the same issues regarding the same contract in two forums at once.") (internal quotation marks omitted). Redundant proceedings also raise the prospect of "inconsistent rulings," which could "jeopardize the appearance and actuality of justice." *Freed II*, 756 F.3d at 1022. Here, because the federal and state actions involve substantially the same parties and issues, and because both cases turn on the extent of Freed's entitlement to the LLC's assets, proceeding in a single forum would "conserve judicial resources and avoid the potential for the two proceedings to reach inconsistent results." *Ibid.* This factor favors abstention.

4. *The order in which jurisdiction was obtained by the concurrent forums.* This factor strongly favors abstention, as Freed filed the first state suit in December 2011 and the second in September 2014, and he brought this suit in February 2016. *See Lumen Constr., Inc.*, 780 F.2d at

697 (holding that this factor favored abstention where the state case was filed "nearly five months before" the federal case).

5. *The source of governing law, state or federal*. The source of the governing law in this federal suit is state law, which favors abstention. *See Freed II*, 756 F.3d at 1022; *Day*, 862 F.2d at 660 ("a state court's expertise in applying its own law favors a *Colorado River* stay").

6. *The adequacy of state court action to protect the federal plaintiff's rights*. As this court held the last time Freed was here trying to avoid *Colorado River* abstention, "[t]he state court is eminently competent to protect Freed's rights, which turn on state law." *Freed I*, 974 F. Supp. 2d at 1147. This court rejected Freed's argument that he, as a Floridian, faced prejudice in the Illinois state court system, noting both his substantial ties to Illinois and—crucially—his own choice as a "savvy and experienced litigation attorney" to litigate in Illinois state court. *See id.* at 1147-48. The Seventh Circuit agreed. *See Freed II*, 756 F.3d at 1022-23 ("We agree with the district court that Freed effectively undermined his own argument of prejudice when he chose the state court forum ….").

Freed wisely does not revive his "prejudice against Floridians" argument this time around. But he does continue to insist that the state court's disagreement with his positions evidences its inadequacy. Doc. 33 at 13. Nothing has changed there, either. It remains the case that "[i]f the state court views Freed in a negative light … it is due to Freed's behavior and tactics in state court," not to any intrinsic inadequacy of the state forum. *Freed I*, 974 F. Supp. 2d at 1148. And, in any event, this court is "not *dismiss[ing]* Freed's federal claims, but rather *stay[ing]* them pending the resolution of the state court proceeding." *Freed II*, 756 F.3d at 1023. If, when the state proceedings conclude, Freed believes the state court has proved

"inadequate," he will have a chance to make that argument here when the stay is lifted.  *Ibid.*
The sixth factor favors abstention.

*7. The relative progress of state and federal proceedings*.  In this suit, there has been an
"absence of any proceedings in the [federal] District Court, other than the filing of the complaint,
prior to the motion to [abstain]."  *Colorado River*, 424 U.S. at 820.  By contrast, Judge Pantle has
addressed numerous motions and issued many rulings, some of which have been appealed to and
upheld by the Appellate Court of Illinois.  Docs. 30-5, 30-6, 30-7, 30-8, 41-1 (Case 12 C 6720);
*see Freed v. Weiss*, 2013 IL App (1st) 122815-U, 2013 WL 6592748 (Ill. App. Dec. 13, 2013).
Freed counters that the state court litigation still "is not making progress."  Doc. 33 at 13.  But
the state suits are undeniably farther along than they were when the Seventh Circuit rejected an
indistinguishable argument three years ago, and Freed does not and could not deny that the state
court has expended substantially more judicial resources on this matter than has this court.  *See
Freed II*, 756 F.3d at 1023.

*8. The presence or absence of concurrent jurisdiction*.  Freed's claims in federal court
arise under Illinois law, and Silver would be susceptible to suit in Illinois court, so the eighth
factor favors abstention.  *Compare Caminiti*, 962 F.2d at 702 (holding that the state court's lack
of jurisdiction to hear a federal claim weighed against abstention).  Freed concedes as much, but
nevertheless rehashes his frustration with a supposed "lack of progress" in state court as a reason
to disregard this factor.  Doc. 33 at 14.  Those arguments are both irrelevant to the question of
jurisdiction and meritless anyhow for the reasons given above.

*9. The availability of removal*.  This factor recognizes a policy against a federal court's
hearing claims that are closely related to non-removable state proceedings.  *See Freed II*, 756
F.3d at 1023; *Day*, 862 F.2d at 659-60.  Case 2011 CH 41529 is non-removable under 28 U.S.C.

§ 1441(b)(2) because diversity provides its only basis for federal jurisdiction and Weiss is a citizen of Illinois, where the state suit was brought. *See Freed I*, 974 F. Supp. 2d at 1144, 1149. The same is true of Case 2014 CH 14770. Doc. 31-2 at ¶¶ 11, 15, 17. Because this federal suit is bound up with the claims in non-removable state proceedings, the ninth factor favors abstention. *See Freed II*, 756 F.3d at 1023 (holding that, because 2011 CH 41529 was non-removable, this factor favored abstention in Freed's previous federal suits).

   10. *The vexatious or contrived nature of the federal claims*. There is no need to comment adversely on Freed's motives to conclude that, because his federal court claims closely track the state court claims that he brought and that have been brought against him, the federal suit is "vexatious" and "contrived" within the meaning of *Colorado River. See Freed II*, 756 F.3d at 1024 ("[E]ven setting aside these presumptions [that Freed attempted to evade the state court], this factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding."); *Interstate Material Corp.*, 847 F.2d at 1289 ("[T]he federal suit could be considered both vexatious and contrived. … Without presuming Interstate's motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit."). That said, there is overwhelming evidence that Freed has behaved vexatiously during the course of the federal and state suits. The last time Freed tried to press his case in federal court, Judge Pantle had already expressed concern on several occasions that he had abused the judicial process by bringing a series of suits in an effort to circumvent her rulings. *See Freed II*, 756 F.3d at 1024 ("Judge Pantle stated that she was 'very concerned about an abuse of process here and a manipulation of the system' and concluded that Freed was 'seeking to litigate matters at the heart of [the state court proceeding] before other judges in an attempt to evade [Judge Pantle's] orders.'") (alterations in original); *Freed I*, 974 F.

Supp. 2d at 1149 (noting that Judge Pantle's rulings as of 2013 had "been *extremely* unfavorable," which made it "obvious as obvious can be" that Freed's fragmented litigation strategy was "an effort to evade Judge Pantle's courtroom"). Freed provides no reason to reach a different conclusion here, particularly given that he himself describes this suit as yet another effort to seek "a forum that is above actual or perceived local prejudice." Doc. 33 at 14. The tenth factor accordingly weighs heavily in favor of abstention.

In sum, nine of the ten factors favor abstention. As when Freed was last before this court, that state of affairs more than suffices to support a finding that *Colorado River* abstention pending resolution of the state suits is warranted. *See Freed II*, 756 F.3d at 1024.

## II. Inherent Authority to Stay

Even if *Colorado River* abstention pending resolution of the state suits were not warranted, this court would exercise its discretion to issue a more limited stay pending the state court's resolution of the motion to enforce the purported settlement in Case 2011 CH 41529. This court has the inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). That inherent authority includes the power to stay proceedings where the party seeking the stay would be spared "hardship or inequity," the prejudice to the non-movant would be comparatively minor, and the stay would significantly advance judicial economy. *Id.* at 255. Here, pressing forward despite the pending motion to enforce the settlement in state court risks subjecting Silver to a considerable hardship—having to defend itself against claims that might have been resolved by a recent settlement. And pressing forward also risks having this court and the parties expend considerable time and effort on a suit that could prove entirely fruitless if it turns out Freed already released Silver from liability. *See Ingersoll Milling Mach.*

*Co. v. Granger*, 833 F.2d 680, 686 (7th Cir. 1987) ("The court did not dismiss the action; it simply stayed further proceedings until the Belgian appeals were concluded. This approach protects the substantial rights of the parties while permitting the district court to manage its time effectively. Such a common sense approach is clearly within the sound discretion of the trial court.") (citation omitted).

As Freed himself recognizes, the *Rosenbauer* court relied on its inherent authority to stay a federal suit pending a state court's determination of the enforceability of a settlement. *See Rosenbauer*, 437 F. Supp. 2d at 1084 ("A decision by the Ohio court that the settlement agreement between the parties is enforceable would render moot any decision of this Court on Plaintiff's breach of contract claim. The time and resources devoted by the Court, parties and witnesses would be wasted. In the interests of the parties and of judicial economy, the Court determines that a stay is warranted pending the outcome of the Ohio case."). As noted above, this court parts ways with *Rosenbauer* on the question whether a pending motion to enforce a settlement can predicate *Colorado River* parallelism. But insofar as *Rosenbauer* held that the court's inherent authority to stay may apply even where full-blown *Colorado River* abstention does not, its conclusion is sound. *See Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1171 n.8 (D. Minn. 2012) ("Apart from abstention, the Court enjoys the inherent power to stay proceedings before it, to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. A stay is appropriate to permit the state court, where jurisdiction first attached, to adjudicate the issues before this Court reaches them, and that adjudication may well have a significant impact on this case ....") (citations omitted) (internal quotation marks omitted); *Rhodes v. Indep. Blue Cross*, 2012 WL 447544, at *4-6 (E.D. Pa. Feb. 9, 2012) (exercising the court's inherent authority to stay the case pending resolution of state

litigation, after considering the parties' competing interests and judicial efficiency); *Melo v. Gardere Wynne Sewell LLP*, 2005 WL 991600, at *3 n.3 (N.D. Tex. Apr. 21, 2005) ("Even if abstention is not warranted under the *Colorado River* doctrine, a federal court has the inherent power to stay proceedings to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (internal quotation marks omitted). At a minimum, then, the pending motion to enforce the settlement should be resolved in state court before this litigation moves forward, given the real and immediate possibility that the state court will make a determination that the purported settlement is valid and enforceable, which in turn would resolve this suit.

## Conclusion

For the foregoing reasons, the motion to stay is granted. *Colorado River* abstention is warranted, and this case is stayed pending the state court's resolution of Case 2011 CH 41529 and Case 2011 CH 14770. Even if *Colorado River* were not satisfied, a more limited stay pending resolution of the motion to enforce the settlement in Case 2011 CH 41529 would be appropriate. If the state court rules on the motion to enforce before the state litigation is fully resolved, either party may move this court to lift the stay.

October 17, 2016

_____
United States District Judge